————o————

No. 4787.

Court of Appeal, Parish of Orleans.

THOMAS C. BUSH ET AL. VS. S. P. WALMSLEY.

Issues of fact only are involved.

Appeal from the Civil District Court, Division "B."

Foster, Milling, Godchaux & Brian, for Plaintiff and Appel-
lant.

Clegg and Quintero, for Defendant and Appellee.

ST. PAUL, J.   On or about November 1, 1904, plaintiffs, who are merchants of Fairmount, La., shipped to defendant, a cotton factor in New Orleans, certain bales of cotton with general instructions "to offer and sell the cotton at any favorable opportunity."

On November 28 they wrote the defendant as follows:

"Dear Sir—We have favored you with some shipments of cotton some weeks ago, with instructions to sell it at first favorable chance, and up to date we have not received any notice of sale. We inclose you a list of some cotton which is delaying settlement, and we ask that you do your best to close it out *at once*, and, if you have any good reasons to believe that the market will go lower on December 3, we would like for you to close out all our holdings, if you think best, before that time."

The list referred to mentions 27 bales of cotton, of which 18 were then in defendant's hands, the other nine arriving only after December 3.   Altogether defendant had for account or plaintiffs 93 bales.   The date referred to (December 3), was that on which the Government expected to issue an official estimate of the cotton crop of that season, and its effect on prices would be favorable or unfavorable, as that estimate might fall below or exceed the popular estimate of the crop.

Now the evidence in this case shows that defendant did endeavor to sell the cotton, but was unable to procure a purchaser at what he considered a favorable price; that on December 3, and for some time previous thereto there was practically no trading in cotton, that cotton could not be sold at the price quoted by the Cotton Exchange, for the reason that although those prices did represent actual sales, nevertheless only a few hundred bales changed hands at those prices, and any attempt to sell more cotton would inevitably have lowered the price still further, owing to the fact that no one was willing to purchase in the then unsettled condition of the market, except at a price substantially below the quotations.

The evidence furher shows that the cotton factors of New Orleans, defendant among the number, believed generally that cotton had already reached the lowest price to which it would go, and that it was best to hold the staple in the hope that a rise in the price might follow the government report.

The cotton belonging to plaintiff was not sold; and when the government estimate came out the price fell still lower instead of rising, as had been hoped for.

On December 6 plaintiffs wrote defendant as follows:

"Dear Sir—As the market has gone so far down, we do not care for you to offer our cotton for sale. We are drawing on you for $1,500. Fifteen hundred. Please honor same when presented."

Under these instructions the cotton was held until about April 11, 1905, when plaintiff fixed a price thereon and ordered it sold. It brought an advance of 1-8 cent per pound above the limit, at which plaintiffs seemed pleased. At that time no dissatisfaction at any previous occurrences was expressed; in fact there was never any mention made of them, until some ten days later when a claim for damages was made upon defendant. The claim culminated in this suit, and is for the difference between the price obtained for the cotton in April and the price for which it is alleged it could have been sold in December.

From a judgment rejecting their demand the plaintiffs prosecute this appeal.

Plaintiffs' contention now is that their letter of November 28 was a peremptory order to close out at once the 27 bales of cotton covered by the list therein mentioned of which 18 had been received by defendant.

They further contend that this letter was also a positive order to sell all the rest of their cotton if defendant "feared that the government report would tend to cause the price of cotton to fall"; that defendant did fear and believe that "the government report * * * would cause a decline in the price of cotton, as evidenced by said Walmsley's letter of date December 1, 1904.

In the first place the letter of November 28 did not direct defendant to sell all of plaintiffs' cotton merely if he "feared" that the price would go lower, but only if he had "good reason to believe so," and even then only "if he thought best."

Now defendant did not have good reason to believe so, nor did he believe so; on the contrary, he thought, and others thought with him, that cotton had already gone to its lowest price. Nor did he or other cotton factors think it best to sell at that time: on the contrary, they thought it best to hold the cotton. Nor

does the letter of December 1, to which reference is made, and which is copied in full hereinafter, express any fear that cotton would go lower when the report came out, the only fear expressed is that the price might not go higher. The letter says: "Unless the government report makes a lower estimate, I am afraid we cannot hope for any material advance in prices, if any, At this time the conservative element think that prices are low enough, etc."

As to the instructions about the cotton covered by the list, the words used were these: "We ask you to do your best to close it out at once."

Considering that these instructions had reference to a staple such as cotton, which can always be sold, the question of price not considered, we can not conceive that the words "do your best" could be given any other meaning than that defendant was to do his best to sell at or about the quoted market prices. Any other construction would be a direction to defendant to make a strenuous effort to do that which he might have done without the least effort on his part. Plaintiffs certainly had in mind that they were asking of defendant to do something which might require some effort on his part, and the only thing which might have required that effort was an endeavor to get the market price.

When defendant endeavored to get this market price he did all that he was instructed to do, and all that could be or was expected of him. Had he sold the cotton for whatever he might have been able to obtain for it he would most assuredly have been called to account for it, and justly so.

As to the fact of plaintiffs not having complained until long afterward, of defendant's failure to sell the cotton before December 3, it is not mentioned as tending to show a ratification of defendant's inaction, in violation of peremptory instructions to act. But we mention it merely as a circumstance tending to show that plaintiffs had no thought until long afterward that their instructions had the meaning which they now seek to give them, or that any instructions of theirs had been disobeyed.

Here is also another circumstance which must be considered as some stress is laid thereon, and plaintiffs rest their cause of action in part thereon.

On December 1, defendant wrote plaintiff as follows:

"Gentlemen—Your favor of the 28th inst. received, stating

—371—

that you had favored me with certain shipments of cotton, with instructions to sell at first favorable chance. In reply, beg to say on arrival of your cotton, we placed same on the market and endeavored to sell, but, owing to an inactive market and depression in prices, we did not think it would be to your best interests to sell. Up to the report issued by the Times-Democrat to-day I have been under the impression that prices were too low, and have not been disposed to sell where sales were left discretionary with me. In other words, this report indicates a larger crop than we calculated on. However, the cotton world accepts this estimate to be an official proposition, and, unless the Government report, issued on Saturday next, makes a lower estimate, I am afraid we cannot hold for any material advance in prices, if any. At this time the conservative element thing that prices are low enough, and if a smaller estimate should be given on Saturday by the Government, better prices should prevail. As to closing out at once the particular marks you refer to, I do not think it would have been possible for me to have done so except at a material concession of price, which you would not have found satisfactory. I have, therefore, not sold any of your cotton up to this time, but if there should be any reaction and a fair demand for cotton at satisfactory prices I will dispose of same first favorable . opportunity.''

This letter by some oversight or carelessness on the part of some one in defendant's office, was misdirected and after going to New York and being returned to defendant, was then forwarded to plaintiffs with a letter expressing regret at the occurrence. This was on December 7.

But no mention of this circumstance was made by plaintiff until April 21, nearly five months after the occurrence, and ten days after the sale of the cotton, when plaintiffs proferred their claim for damages and in their letter of that date (p. 13) setting forth the same, refer to this misdirected letter as follows:

''Had your letter of December 1, in reply to ours of November 28, been addressed to us instead of *sent to New York by error*, which you acknowledge, we would have wired you to close out for what you could get, but after giving you such positive instructions in one letter of the 28, and not having any reply, thought you had closed out all on hand, and was shocked at contents of yours under date of December 1, which you forwarded

—372—

to us with your letter of explanation under date of December 7."

Now plaintiffs' letter instructing defendant to hold the cotton was dated December 6, two days at least before the receipt of defendant's letter of December 1 forwarded on December 7. Plaintiffs therefore knew before the receipt of the letter of December 1 that their cotton had not all been sold, or at any rate they were not under the impression that it had been.

Had they been under that impression and had their complaint been stated earlier, we might have been more favorably impressed with the contents of this letter of April 21.

As it is, we are of opinion that the instructoins contained in their letter of November 28 indicated a state of indecision on ther part, inconsistent with any purpose to give instructions *by wire* "to close for what could be gotten." One who directs another to close out this cotton if the latter has good reason to beileve that the price will go lower after a certain Government report and "if he thinks best" would not likely be stirred into ordering a peremptory sale at any price, by the receipt of a letter, the pith and substance of which is that "at this time the conservative element thinks that prices are low enough and if a smaller estimate should be given by the government better prices should prevail."

Nor does the evidence show with certainty that the letter even if properly addressed and mailed, would have reached plaintiffs in time to have enabled them to communicate even by wire, before the date fixed, or that the order even if received could have been executed except "at a material concession of price which would not have been found satisfactory."

Finally, defendant was under no obligation to go into all the details into which the letter went, and there is ample evidence in this record to satisfy us that plaintiffs were as well aware as defendant himself of the conditions prevailing in the cotton market. (See particularly Doc's pp. 15, 16, 17 and 18, and the postmarks thereon. The Times-Democrat is a morning paper with a wide circulation.

We are of opinion that the judgment of the District Court is correct and it is affirmed.